**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

*Plaintiff*,

vs.                                                                     Case No. 09-10130-01-EFM

MIGUEL ANGEL PADILLA,

*Defendant.*

**MEMORANDUM AND ORDER**

Presently before the Court is the Government's Motion to Revoke and Appeal Conditions

of Release (Doc. 11) filed November 30, 2009. On December 1, 2009, the Court held a hearing on

the motion. For the following reasons, the Court GRANTS the motion.

**I. Background**

On or about October 27, 2009, a federal grand jury charged Defendant, Miguel Padilla, with

possession with intent to distribute more than five kilograms of a mixture or substance containing

a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). The Government moved for

detention on the grounds that the case involves an offense for which a maximum term of

imprisonment of ten years or more is prescribed in 21 U.S.C. § 801 *et seq.* and that Defendant poses

a serious risk of flight and/or danger to the community. On November 25, 2009, Magistrate Judge

Karen M. Humphreys conducted a detention hearing. After hearing the Government's and

Defendant's arguments, Judge Humphreys ordered Defendant released on certain conditions pending trial.

After Judge Humphreys made her ruling, the Government indicated its intention to appeal her decision. Pursuant to D. Kan. R. 72.1.4, the Government moved for a stay of the release pending the filing of a notice of appeal. Judge Humphreys granted the Government's motion and ordered that the release order be stayed until 5:00 p.m. on November 30, 2009, pending the filing of an appeal. On November 30, 2009, the Government timely filed its appeal.

## II. Standard of Review

The district court's authority to review a magistrate's release order derives from 18 U.S.C. § 3145(a)(1). The district court's review of a magistrate judge's order of release is *de novo*.[1] Alhough the court's review is de novo, it need not conduct a de novo evidentiary hearing.[2] The decision of whether to start from scratch or to "incorporate the record of the proceedings conducted by the magistrate judge" is left to the sound discretion of the court.[3] Regardless of which way it elects to proceed, though, the district court must decide "both the facts and the propriety of detention anew without deference to the magistrate judge's findings."[4]

## III. Standards for Detention

Under the Bail Reform Act of 1984, the Court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably

---

[1]*See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[2]*See United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002).

[3]*United States v. Plakio*, 2001 WL 1167305, at *1 (D. Kan. Sept. 5, 2001).

[4]*United States v. Poole*, 2004 WL 1732306, at *1 (D. Kan. July 15, 2004) (citing *Lutz*, 207 F. Supp. 2d at 1251).

assure the appearance of the person as required and the safety of any other person and the community."[5]  "The government has the burden to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community."[6] Because risk of flight and danger to the community are "distinct statutory sources of authority to detain," the government only needs to prove one or the other in order to have the defendant detained.[7] The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence.[8]

In determining whether the government has met its burden, the court considers the following four factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including-
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .[9]

---

[5]18 U.S.C. § 3142(e).

[6]*United States v. Dozal*, 2009 WL 873011, at \*2 (D. Kan. Mar. 27, 2009).

[7]*United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.1985).

[8]*Cisneros,* 328 F.3d at 616.

[9]18 U.S.C. § 3142(g).

In cases where probable cause exists to believe the defendant has committed an offense

for which the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, prescribes a maximum prison

term of ten or more years, a rebuttable presumption arises that no conditions of release will

assure the defendant's appearance and the safety of the community.[10]  "A grand jury indictment

provides the probable cause required by the statute to trigger the presumption."[11]  "Once the

presumption is invoked, the burden of production shifts to the defendant."[12]  While "[t]he

defendant's burden of production is not heavy,"[13] he must, at a minimum, "come forward with

some credible evidence of something specific about his charged criminal conduct or about his

individual circumstances that tends to show that 'what is true in general is not true in the

particular case.'"[14]  Because the presumption is not a bursting bubble presumption,[15] "[e]ven if a

defendant's burden of production is met, the presumption remains a factor for consideration by

the district court in determining whether to release or detain."[16]  Of course, at all times, the

burden of proof remains with the government to show there is no condition or combination of

---

[10]18 U.S.C. § 3142(e)(3)(A).

[11]*United States v. Carr*, 2007 WL 2253220, at *5 (D. Kan. July 31, 2007) (quoting *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000)).

[12]*United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).

[13]*Id.* at 1355.

[14]*United States v. Frater*, 2009 WL 3672516, at *3 (D. Kan. Nov. 2, 2009) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

[15]*United States v. Cox*, 635 F. Supp. 1047, 1051 (D. Kan. 1986).

[16]*Stricklin*, 932 F.2d at 1355.  Some courts have stated that the defendant rebuts the presumption when he meets his burden of production.  As pointed out by the Seventh Circuit, "[u]se of that word in this context is somewhat misleading because the rebutted presumption is not erased.  Instead it remains in the case as an evidentiary finding militating against release." *Dominguez*, 783 F.2d at 707.  In order to avoid confusion, the Court will refrain from stating that Defendant has rebutted the presumption if he meets his burden.

conditions that would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community."[17]

## IV. Analysis[18]

Before discussing the four factors listed above, the Court will first address the threshold inquiries of whether the rebuttable presumption is applicable and, if so, whether Defendant has met his burden of production. With respect to the first inquiry, the Court finds that the presumption applies. The grand jury's indictment charged Defendant with possession with intent to distribute more than five kilograms of a mixture or substance containing a detectable amount of cocaine. This drug offense carries a minimum term of ten years and a maximum term of life imprisonment.[19] As a result, the presumption will be employed. With respect to the second, the Court finds that Defendant has met his burden. According to the pretrial services report, Defendant is a life long resident of the Ceres, California area, is a United States citizen, has no criminal record, and has no substance abuse history. The report further states that Defendant's family has indicated that Defendant can return home and that the family will be able to get Defendant back to Kansas for hearings. At the detention hearing in front of Magistrate Judge Humphreys, Defendant stated that a significant number of his family members live in and around Ceres. The Court finds this evidence is sufficient to shoulder Defendant's light burden.[20]

---

[17]*Lutz*, 207 F. Supp. 2d at 1251.

[18]For purposes of its analysis, the Court incorporates the record of the proceeding conducted by the Magistrate Judge Humphreys.

[19]*See* 18 U.S.C. 841(b)(1)(A).

[20]*See United States v. Tyree*, 2007 WL 1630628, at *1 (D. Colo. June 1, 2007).

## A. *The Nature and Circumstances of the Offense*

The indictment in this case charges Defendant with possession with intent to distribute more than five kilograms of a mixture or substance containing a detectable amount of cocaine. The seriousness of this offense is reflected in the applicable penalty. If convicted, Defendant faces a minimum of ten years in prison. Therefore, in light of the fact that Defendant is charged with a serious drug trafficking offense, the Court finds that factor one favors detention.[21]

## B. *Weight of the Evidence*

According to the Government's factual proffer, Defendant was pulled over by a highway patrolman on Interstate 70 somewhere outside of Colby, Kansas. When asked, Defendant told officers that he owned the vehicle. A search of Defendant's vehicle revealed approximately ten kilos of cocaine in a secret compartment in the radiator. At the time he was stopped, Defendant was by himself and carrying two cellphones. Based on this evidence alone, it appears to the Court that the Government's case against Defendant is strong. As a result, the Court finds that factor also favors detention.[22]

---

[21]*See Frater*, 2009 WL 3672516, at *4 (finding that factor one favored detention because the defendant was charged with a serious drug trafficking offense, conspiracy to distribute a large amount of cocaine); *United States v. Romo-Sanchez*, 170 F. Supp. 2d 1127, 1129 (D. Kan. 2001) (stating that "serious crimes involving drugs . . . favor detention"); *United States v. Henderson*, 958 F. Supp. 521, 523 (D. Kan. 1997) ("The nature of the offense charged-distribution of approximately 133 grams of 'crack' cocaine-also argues against his release."). The reason that the fact that the defendant is charged with a serious drug trafficking offense favors detention is simple: serious drug trafficking offenses carry severe penalties, penalties that provide a defendant "with a great incentive to flee." *United States v. Nichols*, 897 F. Supp. 542, 547 (W.D. Okla. 1995).

[22]*See United States v. Yu*, 2008 WL 2435803, at *4 (D. Kan. June 12, 2008) (holding that because there is substantial evidence of the defendant's guilt, factor two favors detention).

*C. Defendant's History and Characteristics*

As reflected in the pretrial services report, Defendant has no mental health issues, no substance abuse history, no criminal record, no missed court appearances,[23] and was not on probation, parole, or some other type of release at the time he was arrested.[24] While the Court agrees with Defense Counsel that these facts weigh in Defendant's favor, it disagrees with Defense Counsel that factor three favors release.

Based on the evidence presented to the Court, it appears that Defendant has led, at least for the past couple of years, a rather transient life. According to the pretrial service report, Defendant has been unemployed since November of 2007. Additionally, as pointed out by the Government in the December 1 hearing, it appears that Defendant has claimed at least four different residences since 2006.[25]

In addition to Defendant's lifestyle, Defendant's ties to family and/or a community appear to be weak, and, thus, militate against release.[26] Although Defense Counsel stated at the December 1 hearing that a number of Defendant's sibling live in or around Ceres, California,

---

[23]In this case, the Court assigns very little weight to this fact. Unlike before, a ruling against Defendant in this proceeding will result in Defendant serving a lengthy prison sentence. *See United States v. Jones*, 2008 WL 545030, at *2 (M.D. Pa. Feb. 27, 2008) (discounting the fact "that there is no record of a failure to appear in the past" because the "potential of a sentence of ten years to life" was not present in the earlier cases).

[24]Although the pretrial services report shows that two contempt warrants were issued against Defendant in July of 2009, Defense Counsel stated, at the hearing held by the Court on December 1, that the issuance of these warrants was the result of Defendant's failure to make child support payments.

[25]The pretrial services report gives one California address, his mother's. According to the Government's proffer, Defendant gave law enforcement a California address different than his mothers. Defendant also told law enforcement that he had been living in Indiana for the past couple of months, although no street address was given. Lastly, Defendant's driver's licence, which was issued in 2006, gives a California different than the one contained in the pretrial services report and told to law enforcement.

[26]The Court notes Defendant apparent lack of ties to Kansas. *See Romo-Sanchez*, 170 F. Supp. 2d at 1129 (stating that the fact that the defendant does not have "significant contacts in the charging district (Kansas)" supports detention).

Defendant's hometown and the town he is to be released to pending trial, he did not elaborate on

the Defendant's relationship with them. As a consequence, the Court has no way of knowing the

strength of Defendant's ties to his siblings. As for Defendant's tie to his own children, the Court

finds that it is not particularly strong, as Defendant sees them only once per month.

To the extent Defendant has ties to his community or family, the value of these ties is

discounted by two facts. First, "Congress has cautioned against relying heavily on family and

community ties, particularly in cases of drug trafficking."[27] Second, the state from which

Defendant has a tie to, California, butts up against an international border, thus making it

relatively easy for Defendant to flee to a foreign country.[28]

The fact that Defendant is to be released to a home located in California, a state four

states away from Kansas, also gives the Court pause. Such an arraignment appears to present

numerous logistical problems, especially in light of the fact that there is a good possibility that

multiple hearing will take place here in Kansas.[29] For example, how is Defendant going to pay

for transportation? While it is true that Defendant's family has stated that they will pay for

Defendant's trip home, and in fact have already sent money for his bus or train fare back to

California, the Court is concerned about the availability of funds for Defendant's subsequent

trips to and from Kansas. Furthermore, assuming that transportation costs are not an issue,

---

[27]*United States v. Caniglia*, 2002 WL 32351181, at \*4 (E.D. Pa. Apr. 9, 2002). As stated by the Senate Judiciary Committee, "[the Committee] is aware of the growing evidence that the presence of [community ties] does not necessarily reflect a likelihood of appearance and has no correlation with the question of the safety of the community." S. Rep. No. 98-225, at 24-25.

[28]*See United States v. Brown*, 2008 WL 2098070, at \*5 (S.D. Ohio May 16, 2008) (citing the fact that the defendant lives close to an international border as support for its ruling that the government had met its burden of proving that the defendant was a flight risk).

[29]*See United States v. Chen*, 2008 WL 2278613, at \*5 (N.D. Okla. May 30, 2008) (highlighting some of the problems associated with an arrangement such as the one proposed in this case).

because Defendant will be unsupervised, what guarantees are there that Defendant will actually make it from Wichita, Kansas to Ceres, California and back again?  Due to the lengthy sentence Defendant is potentially facing, Defendant's lifestyle to date, and Defendant's lack of ties, it seems likely that Defendant could try to abscond during one of these trips.  Therefore, in light of this consideration, and those mentioned above, the Court finds that the third factor favors detention.

## D.  *Nature and Seriousness of the Danger to any Person or the Community*

"Before releasing defendant on any set of conditions, the Court must be satisfied that defendant will not pose a danger to any other person or to the community."[30]  "The distribution of illegal narcotics constitute a serious and pervasive danger to the community."[31]  As a consequence, "the high risk that defendant will commit additional drug trafficking crimes is sufficient to detain defendant."[32]

In the present case, the Government has not shown that Defendant would be a risk of physical danger to the community.  However, due to the facts that Defendant is unemployed and approximately ten kilos of cocaine were found in Defendant's vehicle, the Court finds that there is a likelihood that Defendant could engage in drug trafficking while he is released.  While the Court is cognizant of the fact that Defendant stated during the hearing before Magistrate Judge Humphreys that he would try to get a job, it is not persuaded that Defendant would secure legitimate employment upon release.  There are simply too many facts weighing against this

---

[30]*United States v. Underwood*, 2000 WL 269790, at *4 (D. Kan. Feb. 15, 2000).

[31]*Cox*, 635 F. Supp. at 1055.

[32]*Underwood*, 2000 WL 269790, at *4.

conclusion: Defendant has been unemployed for over two years, Defendant will be released to a home where none of its inhabitants are employed, Defendant is facing a long prison sentence (which militates against his chances of being employed), and Defendant will be seeking employment at a time of general high unemployment.[33] Therefore, the Court concludes that factor four favors detainment.

## E. Conclusion

Based the Government has carried its burden of proving that pretrial detention is warranted. No set of conditions of release will assure Defendant's pretrial presence as required and/or protect the community from the danger of additional drug trafficking crimes.

Accordingly,

**IT IS THEREFORE ORDERED** that the Government's *Motion to Revoke and Appeal Conditions of Release* (Doc. 11) filed November 30, 2009, is hereby GRANTED.

**IT IS FURTHER ORDERED** that Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

---

[33]*See United States v. Martinez*, 1999 WL 1268376, at *4 (D. Kan. Nov. 3, 1999) (disregarding the defendant's proffer that he would diligently seek employment upon release because it was not satisfied that he would and finding that factor four favored detainment).

**IT IS SO ORDERED.**

Dated this 3rd day of December, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE